IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**W. R. GRACE & CO.,** *et al.*<br><br>        **Debtors.**<br><br>BRADLEY M. CAMPBELL, Commissioner of the New Jersey Department of Environmental PROTECTION, in his official capacity, PETER C. HARVEY, ATTORNEY GENERAL OF NEW JERSEY, in his official capacity,<br><br>        Appellants,<br><br>v.<br><br>W.R. GRACE & CO., et al.<br><br>        Appellees. | Case No. 08-0250 (RLB)<br>Hon. Ronald L. Buckwalter<br>United States District Judge<br>**(by special designation)** |

### CERTIFICATE OF SERVICE

I, James E. O'Neill, hereby certify that on the 7th day of July, 2008, I caused a copy of the following documents to be served on the individuals on the attached service list in the manner indicated:

**BRIEF OF APPELLEES**

*/s/ James E. O'Neill*
James E. O'Neill (Bar No. 4042)

91100-001\DOCS_DE:134674.27

**WR Grace – NJ EPA District Court Appeal Service List (08-250)**
Doc. No. 138640
01 – Hand Delivery
01 – First Class Mail

*Hand Delivery*
)
Stuart B. Drowos, Esquire
Deputy Attorney General
Division of Revenue
Department of Finance
Carvel Office Building
820 North French Street, 8th Floor
Wilmington, DE 19801

*First Class Mail*
)
Rachel J. Lehr, Esquire
John F. Dickinson, Jr., Esquire
Office of the Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ 08625

W. R. Grace Core Group Service List
Case No. 01-1139 (JKF)
Document Number: 27348
07 – Hand Delivery
11 – First Class Mail

(Counsel to Debtors and Debtors in Possession)
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Copy Service)
Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE 19801

*Hand Delivery*
(Counsel to Official Committee of Unsecured Creditors)
Michael R. Lastowski, Esquire
Richard W. Riley, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246

*Hand Delivery*
(Local Counsel to DIP Lender)
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

*Hand Delivery*
(Local Counsel to Asbestos Claimants)
Marla Eskin, Esquire
Mark T. Hurford
Campbell & Levine
800 North King Street, Suite 300
Wilmington, DE 19801

*Hand Delivery*
(Counsel for The Chase Manhattan Bank)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*Hand Delivery*
(Counsel for Property Damage Claimants)
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

*Hand Delivery*
(United States Trustee)
David Klauder, Esquire
Office of the United States Trustee
844 King Street, Room 2311
Wilmington, DE 19801

*Hand Delivery*
(Equity Committee Counsel)
Teresa K. D. Currier
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

*First Class Mail*
(Counsel to Debtor)
David B. Bernick, P.C.
Janet Baer, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

*First Class Mail*
(W. R. Grace & Co.)
Mark Shelniz
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

*First Class Mail*
(Official Committee of Unsecured Creditors)
Lewis Kruger, Esquire
Kenneth Pasquale, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY  10038-4982

*First Class Mail*
(Official Committee of Personal Injury Claimants)
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY  10152

*First Class Mail*
(Official Committee of Property Damage Claimants)
Scott L. Baena, Esquire
Member
Bilzin Sumberg Dunn Baena Price & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL  33131

*First Class Mail*
(Equity Committee Counsel)
Philip Bentley, Esquire
Douglas Mannal, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036

*First Class Mail*
Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC  20005

*First Class Mail*
(Counsel to Official Committee of Unsecured Creditors)
William S. Katchen, Esquire
Duane Morris LLP
744 Broad Street
Suite 1200
Newark, NJ  07102-3889

*First Class Mail*
(Counsel to DIP Lender)
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL  60606

*First Class Mail*
(Counsel for David T. Austern)
Roger Frankel, Esquire
Richard H. Wyron, Esquire
Matthew W. Cheney, Esquire
Orrick Herrington & Sutcliffe LLP
Columbia Center
1152  15th Street, N.W.
Washington, DC  20005-1706

*First Class Mail*
(Counsel to David T. Austern, Future Claimant's Representative)
Phillips, Goldman & Spence, P.A.
John C. Phillips, Jr.
1200 North Broom Street
Wilmington, DE  19806

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: )<br>)<br>W. R. GRACE & CO., *et al.*, )<br>)<br>            *Debtors.* )<br>)<br>_____)<br>)<br>BRADLEY M. CAMPBELL, )<br>COMMISSIONER OF THE )<br>NEW JERSEY DEPARTMENT OF )<br>ENVIRONMENTAL PROTECTION, )<br> in his official capacity, )<br>PETER C. HARVEY, ATTORNEY )<br>GENERAL OF NEW JERSEY, )<br> in his official capacity, )<br>)<br>            *Appellants,* )<br>)<br>     v. )<br>)<br>W. R. GRACE & CO., *et al.* )<br>)<br>            *Appellees.* )<br>_____) | Case No. 08-0250 (RLB)<br>Hon. Ronald L. Buckwalter<br>United States District Judge<br>(by special designation) |

On Appeal From The United States Bankruptcy Court
For The District of Delaware (Fitzgerald, J.)
Case No. 01-01139, Adversary No. 05-52724

### BRIEF OF APPELLEES

DOCS_DE:138664.1

Date 7-7-08
Docket # 9

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT.........................................................................................................................4

    A.    Section 362(b)(4)'s Police Power Exception To The Automatic Stay Does Not Apply To The Penalty Action. ...................................................................4

    B.    The Bankruptcy Court Correctly Issued an Injunction Under Section 105. .............8

CONCLUSION....................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Brock v. Morysville Body Works, Inc.*,
    829 F.2d 383 (3d Cir. 1987).................................................................................... 6, 7

*Chao v. Hosp. Staffing Servs., Inc.*,
    270 F.3d 374 (6th Cir. 2001) ...................................................................................... 5

*Cournoyer v. Town of Lincoln*,
    790 F.2d 971 (1st Cir. 1986) ....................................................................................... 6

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,
    997 F.2d 581 (9th Cir. 1993) ...................................................................................... 5

*In re Baldwin-United Corp. Litig.*,
    765 F.2d 343 (2d Cir. 1985)........................................................................................ 9

*In re Commerce Oil Co.*,
    847 F.2d 291 (6th Cir. 1988) ...................................................................................... 6

*In re Commonwealth Oil Refining Co.*,
    805 F.2d 1175 (5th Cir. 1986) .................................................................................... 6

*In re Cousins Restaurants, Inc.*,
    11 B.R. 521 (Bank. W.D.N.Y. 1981).......................................................................... 6

*In re Hunt*,
    93 B.R. 484 (N.D. Tex. 1988)..................................................................................... 8

*Missouri v. United States Bankruptcy Court*,
    647 F.2d 768 (8th Cir. 1981) ...................................................................................... 5

*NLRB v. Superior Forwarding, Inc.*,
    762 F.2d 695 (8th Cir. 1985) ................................................................................ 8, 10

*Penn Terra Ltd. v. Dep't of Env't Resources*,
    733 F.2d 267 (3d Cir. 1984)............................................................................... passim

*SEC v. First Financial Group of Texas*,
    645 F.2d 429 (5th Cir. 1981) ...................................................................................... 8

*United States v. Nicolet, Inc.*,
    857 F.2d 202 (3d Cir. 1988)................................................................................ 5, 6, 7

*United States v. Wheeling-Pittsburgh Steel Corp.*,
    818 F.2d 1077 (3d Cir. 1987) ..................................................................................... 6

**Statutes**

11 U.S.C. § 105(a) ............................................................................................................... 8

11 U.S.C. § 362(b)(4) .......................................................................................................... 4

# INTRODUCTION

The New Jersey Department of Environmental Protection (the "NJDEP") appeals an order of the Bankruptcy Court (the "Opinion")[1] holding that its state court action seeking penalties for an alleged false report (the "Penalty Action") was filed in violation of the automatic stay and is enjoined. The Bankruptcy Court followed well-established case law in finding that the Penalty Action is not a valid exercise of police power and, thus, does not qualify for exemption from Bankruptcy Code section 362's automatic stay of litigation.

***The Bankruptcy Court Correctly Held that the Penalty Action is Not Exempt from the Automatic Stay.*** Although a state action to protect the environment *can* constitute a valid exercise of its police powers, the Penalty Action is not a valid police power exercise exempted from the automatic stay. In the cases cited by the NJDEP, courts found actions to be exempt from the automatic stay only where the government had brought suit either to (1) force the debtor to remedy a hazardous situation or (2) fix liability for clean-up efforts that the government had undertaken on its own. In none of those cases did the government seek solely to collect millions of dollars in penalties where, as here, the remediation has been completed, the debtor has already paid for the remediation, and there is no ongoing threat to the public.

***The Bankruptcy Court Correctly Exercised Its Discretion in Also Enjoining the Penalty Action Under Section 105.*** Because the Penalty Action violated the automatic stay, it is null and void under section 362. However, even where state actions are considered to be a valid exercise of police power exempted from the automatic stay (which the Penalty Action is not), the Third Circuit has explicitly held that bankruptcy courts nonetheless have discretion to issue an

---

[1] Memorandum Opinion dated April 1, 2008 [Adv. Pro. 05-52724, Dkt. No. 30].

injunction under section 105(a) to prevent unnecessary interference with the bankruptcy. *See Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 273 (3d Cir. 1984). Here, the NJDEP has not disputed the Bankruptcy Court's finding that the Penalty Action would unduly interfere with Grace's reorganization if it were allowed to proceed (Opinion at 7). Given the penalties sought by the NJDEP, Grace would need to divert significant resources from its reorganization to defend against the Penalty Action. (*Id.*). In addition, the Bankruptcy Court found that even if the NJDEP were to prevail in the Penalty Action, the NJDEP would not be able to collect any penalties because it failed to file a proof of claim by the bankruptcy bar date:

> More significant at this stage of the case, however, is that NJDEP will have no claim to be paid in this case in any amount inasmuch as it failed to file a proof of claim by the bar date. Thus, the irreparable harm by virtue of the expense to the estate of defending an action to liquidate a potential $800 million claim only so that the NJDEP can have some comfort in knowing what it could prove but could not collect is self-evident.

(*Id.*). Accordingly, for the reasons set forth herein, the Bankruptcy Court's decision should be affirmed.

## BACKGROUND

On June 1, 2005, more than four years after Grace sought Chapter 11 bankruptcy protection, the NJDEP brought an action against Grace seeking to recover more than $800 million in penalties. (Opinion at 2-3). Although the State of New Jersey was aware of Grace's bankruptcy, the NJDEP filed its action in the Superior Court of New Jersey, Mercer County, without seeking leave from the Bankruptcy Court to do so. (*Id.* at 4). The complaint alleges that Grace, Grace's former vice president Robert J. Bettacchi, and Grace's former employee, Jay H. Burrill, should have provided additional information in a June 5, 1995 report to NJDEP about alleged contamination at Grace's industrial plan in Hamilton Township, New Jersey. (*Id.* at 3).

The complaint seeks to assess a fine against each defendant in the amount of $25,000 under the Industrial Site Recovery Act, N.J.S.A. 13:1k-8 et seq. ("ISRA") and for $50,000 under the New Jersey Spill and Compensation Act, N.J.S.A. 58:10-23.11b et seq ("the Spill Act") for filing the allegedly false report. (*See* Complaint at 21-23, attached as Appendix 1 to NJDEP Brief). In addition, the complaint alleges that the defendants' conduct constitutes a separate violation of the ISRA and the Spill Act for "each day Defendants failed to correct the false information" set forth in the report. (*Id.* at 22). The NJDEP claimed that defendants' refusal to concede the falsity of the June 1995 report subjects them to a total liability of $75,000 for every day from June 5, 1995 until the present day, for a total amount of civil penalties exceeding $800 million (Opinion at 2-3).[2]

The Penalty Action does not seek cessation of a public health, safety or environmental threat, remediation of the Hamilton Plant site, or recovery of clean-up costs. (*Id.* at 5, 8-9). The remediation of the Hamilton Plant site occurred under the auspices of the federal government, with any and all oversight costs borne by the EPA and other potentially responsible parties, and not by the NJDEP. (*Id*). The Penalty Action solely seeks to collect a penalty for Grace's failure to "correct" the allegedly false 1995 report provided to the NJDEP.

On September 19, 2005, Grace filed in the Bankruptcy Court (1) a complaint for declaratory and injunctive relief against the Commissioner of the NJDEP and the Attorney General of the State of New Jersey in their official capacities and (2) a motion for a preliminary injunction. (*Id.* at 1). Grace argued that (1) because the Penalty Action does not constitute a

---

[2] In its attempt to file a late proof of claim, the NJDEP subsequently represented that it sought penalties of $31 million. The NJDEP did not explain the basis for its $31 million claim amount or whether the NJDEP intended that amount to be a cap on the penalties sought.

"police power" action under the Bankruptcy Code, the action is stayed pursuant to the automatic stay of section 362 and (2) in the alternative, even if the action is not subject to the automatic stay, the action "run[s] so contrary to the policy of the Bankruptcy Code that it should not be permitted," *Penn Terra*, 733 F.2d at 273, and thus should be stayed pursuant to the Bankruptcy Court's general equitable powers under section 105 of the Bankruptcy Code. The NJDEP moved to dismiss the complaint. On April 1, 2008, the Bankruptcy Court entered an order (1) holding that the Penalty Action violated the automatic stay, and (2) enjoining the Penalty Action under section 105.[3]

## ARGUMENT

### A. Section 362(b)(4)'s Police Power Exception To The Automatic Stay Does Not Apply To The Penalty Action.

Contrary to the NJDEP's suggestion, Section 362(b)(4) does not entitle a state agency to an absolute exception from the automatic stay. The Third Circuit has made clear that only certain actions brought by a state agency qualify as actions "to enforce [a] governmental unit's or organization's police or regulatory powers." 11 U.S.C. § 362(b)(4). In determining whether an action is exempt from the automatic stay, courts engage in a fact-intensive inquiry that measures the state action against the purpose of the exception, considering "whether the governmental proceeding relates principally to the protection of the government's pecuniary interest in the debtor's property, rather than to its public policy interest in the general safety and welfare."

---

[3] The Bankruptcy Court also entered a preliminary injunction with respect to Mr. Bettachi and Mr. Burrill. (Opinion at 11-11). The NJDEP did not dispute before the Bankruptcy Court, nor does it dispute in this appeal, that if the Penalty Action is stayed against Grace, it should also be stayed against the individuals.

*United States v. Nicolet, Inc.*, 857 F.2d 202, 209 (3d Cir. 1988).[4] Thus, although actions to enforce a state's environmental laws *can* constitute an exercise of the state's police and regulatory powers, the question here is whether the Penalty Action is "principally" directed to the "general safety or welfare" (in which case, the action qualifies for exemption) or to the NJDEP's "pecuniary interest in the debtors' property."

The Bankruptcy Court correctly concluded that the Penalty Action did not relate principally to general safety and welfare based upon two undisputed facts: (1) the action is solely a claim for penalties based upon an alleged false report, and (2) the action did not seek to address any risk to public health, safety or welfare:

> In the instant matter, the U.S. Environmental Protection Agency ("EPA") has cleaned up the New Jersey site and has filed a claim in this bankruptcy case. We find that the purpose of the NJDEP action is solely to liquidate its monetary claim for penalties, notwithstanding NJDEP's reliance on its police and regulatory powers as the basis for its suit, inasmuch as the site as to which the report was filed has been cleaned up and the claim for cleanup belongs to the EPA. The NJDEP action seeking a fine with respect to an allegedly false report, particularly where the cleanup has been completed by a federal agency, where the action is not to address a risk to public health, safety or welfare, and where a risk no longer exists, does not fall under the §362(b)(4) exception to the automatic stay.

(Opinion at 5). Indeed, there is no public health, safety or environmental concern with respect to the Hamilton Plant site because it has been remediated by the EPA. The NJDEP did not perform nor pay for the clean-up. The Penalty Action is, as the NJDEP admits throughout its Brief,

---

[4] Other courts have reached the same conclusion. *See, e.g., Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385-86 (6th Cir. 2001) ("[C]ourts [must] focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety."); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 591 (9th Cir. 1993) (the "terms 'police or regulatory power' as used in [the Code] refer to the enforcement of state laws affecting health, morals, and safety but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court"); *Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir. 1981) ("Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors' property and not to matters of public safety and health.").

simply meant to punish Grace by hitting its pocketbook. As the Bankruptcy Court recognized, these facts distinguish the Penalty Action from the cases cited by NJDEP. (Opinion at 4-6).

The Third Circuit has recognized that an "obvious exercise" of a state's police power arises when an agency seeks to enjoin the debtor to clean up an environmental hazard. *See Penn Terra*, 733 F.2d at 274. Likewise, the Third Circuit has held that the government exercises its police power by bringing an action against a debtor to recover costs actually spent in environmental remediation. *See Nicolet*, 857 F.2d at 210. The cases cited by NJDEP follow these examples, placing the government agency in the position of *either* attempting to enjoin the debtor to remedy an environmental violation *or* fixing the debtors' liability for remediation costs. (*See* NJDEP Br. at 19-20).[5]

At bottom, the NJDEP's appeal is based upon the NJDEP's failure to appreciate the distinction between such cost recovery/remediation actions (which are exempt from the automatic stay) and its action solely to collect penalties (which is not exempt). (*See* NJDEP Br. at 13-14) ("Cost recovery litigation has been found to be exempt from the automatic stay, thus, to say that a penalty action is not does not make sense."). The Third Circuit dealt with precisely such a distinction in *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383 (3d Cir. 1987), one of the cases cited by NJDEP. In *Brock*, the Third Circuit held that the Bankruptcy Code permitted OSHA to

---

[5] In addition to *Penn Terra* and *Nicolet*, NJDEP cites six other cases on pages 19-20 of its Brief. Every one falls within the categories set by *Penn Terra* and *Nicolet*. *See City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) (government may fix liability for costs incurred in environmental remediation); *In re Commerce Oil Co.*, 847 F.2d 291, 297 (6th Cir. 1988) (state may bring action to stop river pollution and to fix penalties based on amount of damage to environment); *United States v. Wheeling-Pittsburgh Steel Corp.*, 818 F.2d 1077 (3d Cir. 1987) (permitting the federal government to bring an action requiring debtor to install pollution control equipment); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 388-89 (3d Cir. 1987) (enforcing OSHA citation ordering abatement for past health and safety hazards); *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175 (5th Cir. 1986) (permitting enforcement of environmental obligations); *Cournoyer v. Town of Lincoln*, 790 F.2d 971 (1st Cir. 1986) (enforcing state court order to remove scrap metal from site); *In re Cousins Restaurants, Inc.*, 11 B.R. 521 (Bank. W.D.N.Y. 1981) (permitting enforcement of zoning ordinance).

enforce a regulatory citation that would "prevent future harm to employees and to restore the work site to a safe condition," *id.* at 388, but it did not permit the agency to enforce an order imposing civil penalties for past violations. As the Third Circuit recognized, "[a]s punishment for past violations, [the penalty order] is not a fully prospective order, which, despite the financial consequences to the distressed corporation, we may enforce to protect workers from the hazards of an unsafe work [sic]." *Id.* at 389. Outside the government's efforts to remediate an ongoing environmental hazard, the "police power" exception does not permit a government agency to impose penalties for wholly past misconduct. Such actions are "principally directed" to the "government's pecuniary interest in the debtor's property," and not to "its public policy interest in the general safety and welfare." *Nicolet*, 857 F.2d at 209.

The magnitude of the threatened penalties and the lack of any public health or welfare concerns demonstrate that the Penalty Action's principal purpose is to put money in the NJDEP's coffers, not to enforce any conceivable regulatory interest. The Penalty Action does not seek to protect the "general safety and welfare" by requiring the debtors to clean up the environment or repay the NJDEP for damages incurred by the State, as was the case in *Penn Terra* and *Nicolet*. Contrary to the NJDEP's assertion that it is seeking to fix damages caused by alleged violations of the law, the record is undisputed that there are no damages to fix because the remediation of the site occurred under the auspices of the federal government, not the State of New Jersey. The State has not incurred any costs for this site. Nor does the Penalty Action seek to deter future harm at the former industrial site by imposing penalties for past environmental harm there. Rather, the NJDEP claims an entitlement to millions of dollars of the Debtors' property based solely on Grace's failure to "correct" an allegedly false report filed over thirteen years ago.

Accordingly, the Penalty Action is not exempted from the automatic stay because the NJDEP's interest extends "principally" to an "interest in the debtors' property."

### B. The Bankruptcy Court Correctly Issued an Injunction Under Section 105.

Although given short shrift, the NJDEP argues that the Bankruptcy Court erred in issuing an injunction under section 105 because "the authority is granted to the courts to supplement and enforce the existing policies of the Code, not to supplant or contradict them." (NJDEP Br. at 21). The NJDEP, however, provides no explanation as to how the injunction purportedly supplants or contradicts the Bankruptcy Code. As demonstrated above, the injunction was appropriate because the Penalty Action violated the automatic stay. But even if the Penalty Action were exempted from the automatic stay, the Third Circuit has specifically recognized that under section 105(a), "the exercise of State power, even for the protection of the public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted." *Penn Terra*, 733 F.2d at 273.[6]

Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). In providing that the filing of a bankruptcy petition does not *automatically* stay some state regulatory actions, Congress specifically recognized that bankruptcy courts retained the authority under section 105 to stay such actions on a case-by-case basis, where a stay is necessary to prevent "an impermissible dilution of federal bankruptcy policy." *Penn Terra*, 733

---

[6] Other courts similarly have held that injunctions should issue when the government action would "unduly interfere with the bankruptcy adjudication," *In re Hunt*, 93 B.R. 484, 492 (N.D. Tex. 1988), or "threaten[] the assets of the debtor's estate." *SEC v. First Financial Group of Texas*, 645 F.2d 429, 440 (5th Cir. 1981); *see also NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 699 (8th Cir. 1985). These courts agree that where a state regulatory action threatens to undermine the policies underlying the Bankruptcy Code or to waste the assets of the estate, bankruptcy courts have ample power to protect the reorganization by issuing an injunction.

F.2d at 273. "The statute provides for such exigencies," because "[t]he bankruptcy court, in its discretion, may issue an appropriate injunction, *even if the automatic stay is not operative*." *Id.* (emphasis added); *see also In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985) ("Even if it should ultimately be determined that the automatic stay . . . does not apply . . . the Bankruptcy Court has authority under § 105 broader than the automatic stay provision of § 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings."). The Third Circuit in *Penn Terra* quoted at length from section 105's legislative history to emphasize that bankruptcy courts should enjoin state "police power" actions when the federal interests in the bankruptcy proceeding outweighed the state's regulatory interest:

> The effect of an exception is not to make the [state] action immune from injunction. The court has ample other powers to stay actions not covered by the automatic stay. Section 105 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11 .... Stays or injunctions issued under these other sections will not be automatic upon commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions.

*Penn Terra,* 733 F.2d at 273 (quoting S. Rep. No. 95-989, at 51; H. Rep. No. 95-595 at 342). In this case, the Bankruptcy Court found that Grace had demonstrated an entitlement to injunctive according to "the usual rules for the issuance of injunctions." Specifically, the Bankruptcy Court found that (1) Grace will succeed on the merits because "the New Jersey action violates the stay and because the NJDEP cannot receive a distribution from this estate based upon its failure to timely file a proof of claim, which it is now barred from filing," (2) the Debtors will suffer irreparable harm if the action is allowed to go forward, (3) the NJDEP will suffer significantly less, if any harm, if the injunction is issued, and (4) the injunction poses "no risk of harm to the State or to the public interest as the site has been cleaned up." (Opinion at 6-8). Aside from arguing that the Penalty Action does not violate the automatic stay, the NJDEP has not disputed any of these findings in its appeal.

9

Accordingly, the law is clear that the Bankruptcy Court had authority to enjoin the Penalty Action under section 105 to protect the interests of Grace's other creditors and to prevent that action from interfering with the orderly administration of the estate. The Bankruptcy Court also appropriately granted the injunction to avoid wasting estate assets. As the Bankruptcy Court noted, this Court affirmed its order denying the NJDEP's motion to file a late proof of claim. (*Id.* at 3, 6, 11; Civil Action No. 07-536, Dkt. No. 18)). Because the NJDEP cannot file a late proof of claim, any claim it could establish in the Penalty Action would be discharged in Grace's bankruptcy (*Id.*). Although the NJDEP is appealing this Court's order affirming the denial of its request to file a late proof of claim, the issuance of an injunction would still be appropriate even if the NJDEP is successful in its appeal. The complexity of the New Jersey action and the magnitude of the penalties sought could result in "an impermissible dilution of federal bankruptcy policy." *Penn Terra*, 733 F.2d at 274; *see also Superior Forwarding*, 762 F.2d at 699 (court may stay under section 105(a) when an action "would threaten the debtor's estate").

## CONCLUSION

For the reasons set forth herein, the Bankruptcy Court's order is consistent with well-established Third Circuit authority and should be affirmed.

DOCS_DE:138664.1

Dated: July 7, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:   (312) 861-2000
Facsimile:   (312) 861-2200

- and -

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400

*Co-Counsel for Appellees*

11