IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re: W.R. GRACE & CO., et al.            :

      Debtors.                                 : Case Number 08-0250 (RLB)
                                             Hon. Ronald L. Buckwalter
                                           : United States District Judge
BRADLEY M. CAMPBELL, COMMISSIONER            (by special designation)
OF THE NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,                  :
in his official capacity,
PETER C. HARVEY,                           : On Appeal From The
ATTORNEY GENERAL OF NEW JERSEY,              United States Bankruptcy
in his official capacity,                  : Court For The District
                                             Of Delaware (Fitzgerald, J.)
                                           : Bankruptcy Case No. 01-1139
      Appellants,
                                           :
         v.                                 :

W.R. GRACE & CO., et al.
                                           :
      Appellees.
                                           :

APPELLANTS' RESPONSE TO APPELLEE MOTION
FOR LEAVE TO FILE SUR REPLY BRIEF

                       ANNE MILGRAM
                       ATTORNEY GENERAL OF NEW JERSEY
                       Richard J. Hughes Justice Complex
                       25 Market Street, PO Box 093
                       Trenton, New Jersey 08625-0093
                       Attorney for Appellants
                       (609) 984-5016

                       Stuart B. Drowos (Bar 427)
                       Deputy Attorney General
                       Division of Revenue, Department of Finance
                       Carvel State Building
                       820 North French Street, 8th Floor
                       Wilmington, Delaware 19801
                       Local Counsel

Rachel Jeanne Lehr
John F. Dickinson, Jr.,
New Jersey Deputy Attorneys General
   On the Brief

**TABLE OF CONTENTS**

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

    POINT I

        The Bankruptcy Court Incorrectly Held that
        the Penalty Action is Not Exempt From the
        Automatic Stay . . . . . . . . . . . . . . . . . . . . 1

    POINT II

        The Bankruptcy Court Incorrectly Enjoined the
        Department of Environmental Protection from
        Pursuing the Penalty Action Against Mr.
        Bettachi and Mr. Burrill . . . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES**

PAGE

CASES CITED

Brock v. Morysville Body Works, Inc.,
    829 F.2d 383 (3rd Cir. 1987) . . . . . . . . . . . . . . . 1, 2

In Re: Combustion Engineering,
    391 F.3d 190 (3rd Cir. 2004.) . . . . . . . . . . . . . . . . 4

In Re: Federal-Mogul Global, Inc.,
    300 F.3d 368 (3rd Cir. 2002) . . . . . . . . . . . . . . . . 5

In Re: Grace Co., 115 Fed. Appx. 565 (3rd Cir. 2004) . . . . . . 7

In Re: Kaiser Group International, Inc.,
    399 F.3d 558 (3rd Cir. 2005) . . . . . . . . . . . . . . . . 4

Pacor, Inc. v. Higgins, 743 F.2d 984
    (3rd Cir. 1984) . . . . . . . . . . . . . . . . . 5, 6, 7, 8

United States v. LTV Steel Co.,
    269 B.R. 576 (W.D. Pa. 2001) . . . . . . . . . . . . . 1, 2, 3

INTRODUCTION

The Appellants, the Commissioner of the New Jersey Department of Environmental Protection ("NJDEP") and the Attorney General of New Jersey, do not oppose Appellees' Motion for Leave to File a Sur-Reply in the within matter. However, the Appellants respectfully request that the Court consider the following in response to the arguments raised by the Appellees in its Sur-Reply brief.

ARGUMENT

POINT I

The Bankruptcy Court Incorrectly Held that the Penalty Action is Not Exempt From the Automatic Stay.

In its Sur-Reply, Appellees (hereinafter "Grace") asserts that United States v. LTV Steel Co., 269 B.R. 576 (W.D. Pa. 2001), which held that an action to fix a civil penalty for violations of the federal Clean Air Act was not subject to the automatic stay, is inapposite and in conflict with Third Circuit precedent, namely, Brock v. Morysville Body Works, Inc., 829 F.2d 383 (3rd Cir. 1987). It is not. Both cases are in sync on the application of the automatic stay to penalty actions. More particularly, both cases recognize that an action to collect a penalty is subject to the automatic stay, but an action to fix one is not. Thus, the two cases do not differ on the law, they differ on the facts.

1

In <u>Brock</u>, a Chapter 11 debtor, Moryville Body Works, received a post-petition citation from the United States Department of Labor for certain violations of the Occupational Safety and Health Act. The citation ordered Morysville to abate the violations and assessed a civil penalty of $21,000. Morysville failed to contest the citation, and it became a final order. At that time, the $21,000 penalty was reduced to a judgment. The government then attempted to enforce the penalty as part of a summary action to enforce the order. The government ran afoul of the automatic stay in <u>Brock</u> only because it tried to enforce the abatement portion of the order <u>and</u> the penalty portion of the order. The Third Circuit ruled that the government only could enforce the abatement portion of the order and not the penalty because the action to collect a penalty was subject to the automatic stay.

The factual setting of this matter is different from that of <u>Brock</u>. Here, no penalty has yet been fixed. That is the object of the State court penalty action ("Penalty Action"). What NJDEP is trying to do here is simply fix the penalty, nothing more and nothing less, which NJDEP is allowed to do under the police powers exception to the automatic stay. In short, contrary to the assertions of Grace, <u>LTV</u> is not in conflict with <u>Brock</u>. It is consistent with <u>Brock</u> and thus directly pertinent to this matter.

Grace's assertion that the United States Environmental Protection Agency ("EPA") in <u>LTV</u> is somehow more deserving of relief than the NJDEP because the EPA sought "penalties for actual environmental harm" is wrong. Sur-Reply brief at 2. The Bankruptcy court was also wrong when it said that Grace's misrepresentations had no "nexus to the protection of public health and safety and welfare." Opinion at 5, n.4. Businesses that walk away from a contaminated site after lying to the government about the environmental conditions of a site put subsequent occupiers of and visitors to the site at risk. That risk was particularly acute here when one considers the dangerous properties of the tremolite asbestos waste that Grace left behind at the Hamilton plant. Indeed, it is difficult to imagine a more obvious nexus to the public health, safety and welfare than the one present in this case. People worked at and traversed the asbestos-laden site for at least five years before the EPA commenced cleanup activities.

In sum, it is altogether appropriate to allow NJDEP to fix a penalty here. The deterrent value of a penalty is the only way NJDEP can protect the public in these situations, which is why the penalty provisions exist in the first place, and why NJDEP should be allowed to fix the penalty under the police powers exception to the automatic stay. Given that one of the principal reasons Grace is in bankruptcy is because of injuries and deaths due to asbestos exposure, it is hard to believe Grace now argues that lying about leaving asbestos on site is not health related.

3

POINT II

The Bankruptcy Court Incorrectly Enjoined the Department of Environmental Protection from Pursuing the Penalty Action Against Mr. Bettachi and Mr. Burrill.

Grace argues in its Sur-Reply that the Bankruptcy Court properly enjoined NJDEP from pursuing Messrs. Bettachi and Burrill in the Penalty Action. Grace is wrong.

As its first point, Grace argues that the NJDEP should not be allowed to raise the issue of the Bettachi/Burrill injunction at this phase of the litigation because the issue was not raised in NJDEP's initial brief. Grace is incorrect. Whether or not the Bankruptcy Court's injunction was proper as to Messrs. Bettachi and Burrill is an issue of subject-matter jurisdiction. "It is well-settled law that subject matter jurisdiction can be challenged at any point before final judgment, even if challenged for the first time on appeal." In Re: Kaiser Group International, Inc., 399 F.3d 558, 565 (3rd Cir. 2005). Indeed, an appellate court reviews de novo whether a lower court had subject matter jurisdiction over non-derivative third-party claims against non-debtors. In Re: Combustion Engineering, 391 F.3d 190, 224, n.34 (3rd Cir. 2004.) Thus, the issue of the bankruptcy court's jurisdiction over the Penalty Action filed against Messrs. Burrill and Bettachi is properly before the Court.

When the issue of subject-matter jurisdiction is viewed through the lens of this case, it is clear that the Bankruptcy

Court did not have jurisdiction over the Penalty Action filed against Mr. Bettachi and Mr. Burrill. Under Title 11 of the Bankruptcy Code, a Bankruptcy Court's jurisdiction extends over four types of cases: 1) cases under Title 11; 2) proceedings arising under Title 11; 3) proceedings arising in a case under Title 11; and 4) proceedings related to a case under Title 11. Id. at 225. The last category of cases is at issue here. The question is whether the Penalty Action between NJDEP and Mr. Bettachi and Mr. Burrill is "related to" the Grace bankruptcy. Third-party suits such as the one against Mr. Bettachi and Mr. Burrill are "related to" a bankruptcy case when they "conceivably may have an effect on the bankruptcy estate." Ibid. Thus, the question is whether is the Penalty Action conceivably may have an effect on the Grace bankruptcy. It would not.

The seminal test for whether a proceeding "conceivably may have an effect on the bankruptcy estate" was established by the United States Court of Appeals for the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984). There, the Third Circuit determined:

> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impact upon the handling and administration of the bankrupt estate. [Id. at 994.]

The Pacor test was further refined by the Third Circuit in In Re: Federal-Mogul Global, Inc., 300 F.3d 368 (3rd Cir. 2002):

5

> The test articulated in <u>Pacor</u> for whether a lawsuit could "conceivably have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy without the intervention of another lawsuit." [<u>Id</u>. at 882.]

In this matter, the Penalty Action against Mr. Bettachi and Mr. Burrill would not affect the bankruptcy without the intervention of another lawsuit.

Pursuant to section 6.7(B) of the Amended and Restated By-Laws of W.R. Grace, dated March 15, 1999 (attached hereto as Exhibit A), an indemnification claimant must submit a written request for indemnification to Grace and all necessary documentation and information that would allow Grace to "determine whether and to what extent the claimant is entitled to indemnification." Under its By-Laws, Grace may deny a claim for indemnification if it determines that "the claimant has not met the standard of conduct which makes it permissible under the [General Corporation Law of Delaware] for the Corporation to Indemnify the claimant." Amended and Restated By-Laws of W.R. Grace, §6.7(C). In the event that Grace determines that the claimant is not entitled to be indemnified, the claimant is obligated to repay any amounts advanced to the claimant. Amended and Restated By-Laws of W.R. Grace, §6.7(A). If a claim for indemnification is not paid in full by Grace, a claimant has the right to sue Grace to recover any unpaid portion of the claim. Amended and Restated By-Laws of W.R. Grace, §6.7(C). Thus, under Grace's By-Laws, indemnification

requires a determination by Grace that the claimant met the standard of conduct required of the claimant under law. Dissatisfied claimants may file suit against Grace to recover on the claims.

Under the indemnification provisions of Grace's By-Laws, Grace would not be bound automatically by any judgment rendered against Messrs. Bettachi and Burrill in the Penalty Action. Only in circumstances involving automatic indemnification could a Penalty Action against a non-debtor be said to be "related to" a bankruptcy. See Pacor, supra, 743 F.2d at 995. Like the action filed against the non-debtor Pacor, Inc. in Pacor, the Penalty Action at best would be "a mere precursor to the potential third party claim for indemnification," as neither Mr. Bettachi's nor Mr. Burrill's claim for indemnification has accrued. Ibid. Their claims are merely prospective, and another lawsuit may well be required for the recovery of any claims against Grace. As such, the Penalty Action against Mr. Bettachi and Mr. Burrill would not affect the Grace bankruptcy, and, therefore, would not be "related to" the Grace bankruptcy. Thus, it should not have been enjoined.[1]

---

[1] In its Sur-Reply, Grace cites to the unpublished decision of the Third Circuit in In Re: Grace Co., 115 Fed. Appx. 565 (3rd Cir. 2004) as holding that the prospect of indemnification by Grace made it appropriate to stay suits against the Maryland Casualty Corporation, a Grace insurer. While the Court's decision contains a statement to that effect, the Court did not so hold. The issue in the case was not whether the suits against Maryland Casualty Corporation were "related to" the bankruptcy and thus whether the stay was proper, but whether the District Court erred in overturning the Bankruptcy Court's refusal to

7

It remains to be noted that, contrary to the representations of Grace in its Sur-Reply, NJDEP did not represent to the Bankruptcy Court that it would not proceed against Mr. Bettachi and Mr. Burrill, though the Court's opinion indicates that it believed that was the case. Rather, the actual exchange between counsel for NJDEP and the Court indicates that counsel was trying to explain that NJDEP would pursue Grace in the Penalty Action and that NJDEP had the discretion to pursue both the individuals and Grace. The actual exchange is as follows:

> THE COURT: But you're telling me you want to pursue this against the officers, not the Debtor. But the claim is against the estate.
>
> MR. DEVINE: No, Your Honor. I'm sorry if I misstated. We intend to go against Grace in the state court action.
>
> THE COURT: Okay. So not against the officers. Against the officers and against Grace.
>
> MR. DEVINE: Yes, Your Honor. That's where it would stand.
>
> THE COURT: Okay, So, I apologize. I, I got sidetracked for a minute because of that recitation. So you have the discretion and look to the circumstances.

---

modify the stay. The Court merely held that the Bankruptcy Court did not err in refusing to modify the injunction. The Court did not rule on the Bankruptcy Court's initial decision to preliminarily enjoin the suits. Thus, at best, the Court's statement about the appropriateness of the stay is dicta. It does not impact the rulings of Pacor and Federal Mogul. Pacor and Federal Mogul, not In Re: Grace, control the Bankruptcy Court's decision to enjoin the Penalty Action against Messrs. Bettachi and Burrill.

MR. DEVINE: That's right.

Transcript of April 2, 2007 Hearing, at 81.

While the Court apparently construed the above exchange as meaning that NJDEP would not pursue Mr. Bettachi and Mr. Burrill, that was not the intent of counsel. Counsel merely intended to clarify to the Court that Grace, as well as the individuals, would be pursued, as the Court was unclear on that issue. Indeed, at one point in the colloquy, the Court appears to have understood that because the Court stated to counsel that the Penalty Action would be pursued "Against the officers and against Grace." To which counsel replied, "Yes, Your Honor. That's where it would stand."

It appears then that some mis-communication occurred during the hearing and that the Court misunderstood some of counsel's responses. Notwithstanding that, NJDEP did not mean to represent to the Bankruptcy Court that it did not intend to pursue Mr. Bettachi and Mr. Burrill. The State has always intended to pursue both the individuals and Grace in the Penalty Action if that action moves forward.

In sum, the Penalty Action filed against Messrs. Bettachi and Burrill is not "related to" the Grace bankruptcy, and the Bankruptcy Court did not have subject-matter jurisdiction over the action. The Bankruptcy Court's order enjoining the Penalty Action against Grace, therefore, should be vacated.

CONCLUSION

For the reasons stated herein and in the Appellants' Supporting and Reply briefs, the Bankruptcy Court's order should be vacated.

Respectfully submitted,

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY


By: /S/Rachel Jeanne Lehr
     Rachel Jeanne Lehr
     Deputy Attorney General

     S/ Stuart B. Drowos
     Stuart B. Drowos (Bar 427)
     Deputy Attorney General
     Division of Revenue
     Department of Finance
     Carvel State Building
     820 North French Street, 8th Floor
     Wilmington, Delaware 19801

     Local Counsel for Appellants

Dated: August 15, 2008

# EXHIBIT A

Adopted on March 15, 1999

AMENDED AND RESTATED
BY-LAWS
of
W. R. GRACE & CO.

Incorporated under the Laws of the State of Delaware

ARTICLE I
OFFICES AND RECORDS

Section 1.1. *Delaware Office.* The principal office of the Corporation in the State of Delaware shall be located in Wilmington, Delaware, and the name and address of its registered agent is The Prentice-Hall Corporation System, Inc., 1013 Centre Road, Wilmington, Delaware.

Section 1.2. *Other Offices.* The Corporation may have such other offices, either within or without the State of Delaware, as the Board of Directors may designate or as the business of the Corporation may from time to time require.

Section 1.3. *Books and Records.* The books and records of the Corporation may be kept outside the State of Delaware at such place or places as may from time to time be designated by the Board of Directors.

ARTICLE II
STOCKHOLDERS

Section 2.1. *Annual Meeting.* The annual meeting of the stockholders of the Corporation shall be held annually (a) on the tenth day of May, or (b) if such day be a Saturday, Sunday or a holiday at the place where the meeting is to be held, on the last business day preceding or on the first business day after such tenth day of May, as may be fixed by the Board of Directors, or (c) on such other date as may be fixed by the Board of Directors.

Section 2.2. *Special Meeting.* Subject to the rights of the holders of any series of stock having a preference over the Common Stock of the Corporation as to dividends or upon liquidation ("*Preferred Stock*") with respect to such series of Preferred Stock, special meetings of the stockholders may be called only by the Chairman, by the President or by the Board of Directors pursuant to a resolution adopted by a majority of the total number of directors which the Corporation would have if there were no vacancies (the "*Whole Board*").

stockholder. Neither the business to be transacted at, nor the purpose of, any annual or special meeting of the stockholders or the Board of Directors or committee thereof need be specified in any waiver of notice of such meeting.

Section 6.5. *Audits.* The accounts, books and records of the Corporation shall be audited upon the conclusion of each fiscal year by an independent certified public accountant selected by the Board of Directors, and it shall be the duty of the Board of Directors to cause such audit to be done annually.

Section 6.6. *Resignations.* Any director or any officer or assistant officer, whether elected or appointed, may resign at any time by giving written notice of such resignation to the Chairman, the President, or the Secretary, and such resignation shall be deemed to be effective as of the close of business on the date said notice is received by the Chairman, the President, or the Secretary, or at such later time as is specified therein. No formal action shall be required of the Board of Directors or the stockholders to make any such resignation effective.

Section 6.7. *Indemnification and Insurance.*

(a) Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter, a "proceeding"), by reason of the fact that he or she or a person of whom he or she is the legal representative is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, maintained or sponsored by the Corporation, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the GCL as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith, and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that except as provided in paragraph (C) of this Section 6.7, the Corporation shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors. The right to indemnification conferred in this Section 6.7 shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in

-13-

defending any such proceeding in advance of its final disposition, such advances to be paid by the Corporation within 20 days after the receipt by the Corporation of a statement or statements from the claimant requesting such advance or advances from time to time; provided, however, that if the GCL requires, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Corporation of an undertaking by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section 6.7 or otherwise.

(B) To obtain indemnification under this Section 6.7, a claimant shall submit to the Corporation a written request, including therein or therewith such documentation and information as is reasonably available to the claimant and is reasonably necessary to determine whether and to what extent the claimant is entitled to indemnification. Upon written request by a claimant for indemnification pursuant to the first sentence of this paragraph (B), a determination, if required by applicable law, with respect to the claimant's entitlement thereto shall be made as follows: (1) if requested by the claimant, by Independent Counsel (as hereinafter defined), or (2) if no request is made by the claimant for a determination by Independent Counsel, (i) by the Board of Directors by a majority vote of a quorum consisting of Disinterested Directors (as hereinafter defined) or (ii) if a quorum of the Board of Directors consisting of Disinterested Directors is not obtainable or, even if obtainable, such quorum of Disinterested Directors so directs, by Independent Counsel in a written opinion to the Board of Directors, a copy of which shall be delivered to the claimant, or (iii) if a quorum of Disinterested Directors so directs, by the stockholders of the Corporation. In the event the determination of entitlement to indemnification is to be made by Independent Counsel at the request of the claimant, the Independent Counsel shall be selected by the Board of Directors unless there shall have occurred within two years prior to the date of the commencement of the action, suit or proceeding for which indemnification is claimed a "Change of Control" (as defined below) in which case the Independent Counsel shall be selected by the claimant unless the claimant shall request that such selection be made by the Board of Directors. If it is so determined that the claimant is entitled to indemnification, payment to the claimant shall be made within 10 days after such determination.

(C) If a claim under paragraph (A) of this Section 6.7 is not paid in full by the Corporation within 30 days after a written claim pursuant to paragraph (B) of this Section 6.7 has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final

-14-

disposition where the required undertaking, if any is required, has been tendered to the Corporation) that the claimant has not met the standard of conduct which makes it permissible under the GCL for the Corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the Corporation. Neither the failure of the Corporation (including its Board of Directors, Independent Counsel or stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the GCL, nor an actual determination by the Corporation (including its Board of Directors, Independent Counsel or stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

(D) If a determination shall have been made pursuant to paragraph (B) of this Section 6.7 that the claimant is entitled to indemnification, the Corporation shall be bound by such determination in any judicial proceeding commenced pursuant to paragraph (C) of this Section 6.7.

(E) The Corporation shall be precluded from asserting in any judicial proceeding commenced pursuant to paragraph (C) of this Section 6.7 that the procedures and presumptions of this Section 6.7 are not valid, binding and enforceable and shall stipulate in such proceeding that the Corporation is bound by all the provisions of this Section 6.7.

(F) The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Section 6.7 shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, these By-laws, agreement, vote of stockholders or Disinterested Directors or otherwise. No repeal or modification of this Section 6.7 shall in any way diminish or adversely affect the rights of any director, officer, employee or agent of the Corporation hereunder in respect of any occurrence or matter arising prior to any such repeal or modification.

(G) The Corporation may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the GCL. To the extent that the Corporation maintains any policy or policies providing such insurance, each such director or officer, and each such agent or employee to which rights to indemnification have been granted as provided in paragraph (H) of this Section 6.7, shall be covered by such policy or policies in accordance with its or their terms to the maximum extent of the coverage thereunder for any such director, officer, employee or agent.

-15-

(h) The Corporation may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification, and rights to be paid by the Corporation the expenses incurred in defending any proceeding in advance of its final disposition, to any employee or agent of the Corporation to the fullest extent of the provisions of this Section 6.7 with respect to the indemnification and advancement of expenses of directors and officers of the Corporation.

(i) If any provision or provisions of this Section 6.7 shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (1) the validity, legality and enforceability of the remaining provisions of this Section 6.7 (including, without limitation, each portion of any paragraph of this By-law containing any such provision held to be invalid, illegal or unenforceable, that is not itself held to be invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby; and (2) to the fullest extent possible, the provisions of this Section 6.7 (including, without limitation, each such portion of any paragraph of this By-law containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

(j) For purposes of this Section 6.7:

(1) "Disinterested Director" means a director of the Corporation who is not and was not a party to the matter in respect of which indemnification is sought by the claimant.

(2) "Independent Counsel" means a law firm, a member of a law firm, or an independent practitioner, that is experienced in matters of corporation law and shall include any person who, under the applicable standards of professional conduct then prevailing, would not have a conflict of interest in representing either the Corporation or the claimant in an action to determine the claimant's rights under this Section 6.7.

(3) "Change of Control" has the meaning given such term in the Corporation's 1998 Stock Incentive Plan, as the same may be amended or superseded from time to time.

(k) Any notice, request or other communication required or permitted to be given to the Corporation under this Section 6.7 shall be in writing and either delivered in person or sent by telecopy, telex, telegram, overnight mail or courier service, or certified or registered mail, postage prepaid, return receipt requested, to the Secretary of the Corporation and shall be effective only upon receipt by the Secretary.

-16-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: W.R. GRACE & CO., et al.<br><br>       *Debtors.* | : Case Number 08-0250 (RLB)<br>  Hon. Ronald L. Buckwalter<br>: United States District Judge<br>  (by special designation) |
| BRADLEY M. CAMPBELL, COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br>in his official capacity,<br>PETER C. HARVEY,<br>ATTORNEY GENERAL OF NEW JERSEY,<br>in his official capacity,<br><br>       *Appellants,*<br><br>       v.<br><br>W.R. GRACE & CO., et al.<br><br>       *Appellees.* | :<br>: On Appeal From The<br>  United States Bankruptcy<br>: Court For The District<br>  Of Delaware (Fitzgerald, J.)<br>: Bankruptcy Case No. 01-1139<br>:<br>:<br>:<br>:<br>: |

**CERTIFICATION OF SERVICE**

      **Katherine B. Ebeling**, of full age, being duly sworn according to law, upon her oath deposes and says:

      1.  I am a Legal Secretary in the Division of Law, Department of Law and Public Safety, State of New Jersey.

      2.  On August 15, 2008, at the direction of Rachel Jeanne Lehr, Deputy Attorney General, I caused two copies each of Appellants' Response to Appellee Motion for Leave to File Sur Reply Brief and the within Certification of Service in the above-referenced matter to be mailed via UPS overnight mail to:

            Janet S. Baer, Esquire
            Kirkland & Ellis
            200 East Randolph Drive
            Chicago, Illinois 60601

David M. Bernick, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601

Lori Sinanyan, Esquire
Kirkland & Ellis LLP
777 S. Figueroa Street, Suite 3700
Los Angeles, California 90017

James E. O' Neill, Esquire
Pachulski, Stang, Ziehl, Young,
Jones & Weintraub, P.C.
919 North Market Street, 17th Floor
Wilmington, Delaware 19801

Laura D. Jones, Esquire
Pachulski, Stang, Ziehl, Young,
Jones & Weintraub, P.C.
919 North Market Street, 17th Floor
Wilmington, Delaware 19801

Timothy P. Cairns, Esquire
Pachulski, Stang, Ziehl, Young,
Jones & Weintraub, P.C.
919 North Market Street, 17th Floor
Wilmington, Delaware 19801

Anthony J. Marchetta, Esquire
Day Pitney, LLC
200 Campus Drive
Florham Park, New Jersey 07932

Stuart Drowos, Deputy Attorney General
Div. of Revenue, Dept. of Finance
Carvel State Building
820 North French Street, Floor 8
Wilmington, DE 19801

I swear that the foregoing statements made by me are true. I am aware that, if any of the foregoing statements made by me are willfully false, I am subject to punishment by law.

*Katherine B. Ebeling*
Katherine B. Ebeling

Dated: August 15, 2008