IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: : | |
| : | |
| W.R. GRACE & CO., et al., : | |
| : | CIVIL ACTION NO. 08-250 |
| Debtors. : | |
| _____: | |
| : | |
| STATE OF NEW JERSEY, : | BANKRUPTCY CASE NO. 01-1139 |
| DEPARTMENT OF ENVIRONMENTAL : | |
| PROTECTION, : | |
| : | |
| Appellants, : | |
| : | |
| v. : | |
| : | |
| W.R. GRACE & CO., et al., : | |
| : | |
| Appellees. : | |
| _____: | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S. J.                                                                              March 12, 2009

**I. INTRODUCTION**

      A Chapter 11 bankruptcy filing triggers an automatic stay halting actions against the debtor while providing an orderly procedure for recovery of funds. An exception to the automatic stay[1] permits governmental units to file actions to enforce their "police or regulatory power." The New Jersey Department of Environmental Protection (NJDEP) presently appeals the Bankruptcy Court's determinations that (1) its efforts to fix a civil penalty for violation of New Jersey's Industrial Site Recovery Act (ISRA) falls outside the statutory exception to the automatic stay, and (2) the court's enjoining the NJDEP from fixing a civil penalty against Grace and two of its

---

[1] The exception is found in 11 U.S.C. § 362(b)(4).

officers. For the reasons discussed below, this Court disagrees with the Bankruptcy Court's analysis of 11 U.S.C. § 362(b)(4), while it nonetheless affirms the Bankruptcy Court's issuance of injunctions under the authority provided by 11 U.S.C. § 105(a).

## II. STANDARD

District Courts have appellate jurisdiction over a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). This Court must accept the Bankruptcy Court's factual determinations unless those determinations are clearly erroneous. See FED. R. BANKR. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."). The Court reviews the Bankruptcy Court's legal decisions de novo. In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." Mellon Bank, N.S. v. Metro Commc'n, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). This Court's appellate responsibilities are further informed by the directive of the United States Court of Appeal for the Third Circuit, which reviews bankruptcy court opinions on a *de novo* basis. In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002).

## III. BACKGROUND AND DISCUSSION[2]

### A.     NJDEP's Efforts to Fix its Civil Penalty Is Protected by the Automatic Stay

---

[2]The parties are familiar with the facts and thus the Court will summarize only those facts necessary for the subsequent discussion. Greater detail of the factual summary can be found in this Court's prior decision: In re Grace, Civ. A. No. 07-536, 2008 WL 687357 (Mar. 11, 2008).

In June 2005, The NJDEP initiated suit in Mercer County, New Jersey, against Grace and two of its executives, Robert J. Bettacchi and Jay H. Burrill, for misrepresentation and false statements in a 1995 report disclosing hazardous material under New Jersey's Industrial Site Recovery Act (ISRA), N.J.S.A. 13:1K-6 - 13.  In September 2005, Grace sought declaratory and injunctive relief, noting that "the New Jersey action clearly threatens the orderly administration of the Grace estate." (Debtors' Mot. for Inj. 2.)  On April 1, 2008, the Bankruptcy Court granted Grace's motion for declaratory and injunctive relief determining that NJDEP's civil action violated "the automatic stay of 11 U.S.C. § 362 and is null and void as to Debtors." In re Grace, 384 B.R. 678, 686 (Bankr. D. Del. 2008.)  The Bankruptcy Court ordered that the Mercer County suit be dismissed with prejudice, and that the New Jersey Defendants be preliminarily enjoined from "pursuing their action against Mr. Bettacchi and Mr. Burrill until further order of this court." Id.  This appeal followed.

In bankruptcy, the automatic stay prohibits the continuation or commencement of a legal proceeding against a debtor that could have been filed before the bankruptcy petition was filed or to recover a claim that arose prior to filing.  See 11 U.S.C. § 362(a)(1).  Recognizing that the automatic stay could be abused, Congress provided a statutory exception from the stay so that governmental units could pursue wrongdoers by means of its "police or regulatory powers."  11 U.S.C. § 362(b)(4).[3]

---

[3] The automatic stay provision provides that:
> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay–
> * * *
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or

The Bankruptcy Court's analysis turns on the fact that the United States Environmental Protection Agency (EPA) cleaned up Grace's polluted site at no cost to New Jersey. The bankruptcy court determined that NJDEP's suit solely sought to impose a civil penalty and, as it did "not to address a risk to public health, safety, or welfare," it was not covered by section 362(b)(4). Id. We interpret section 362(b)(4) somewhat differently.

> **1. A Plain Text Reading of § 362(b)(4) and its Legislative History Does Not Support the Bankruptcy Court's Reading of the 11 U.S.C. § 362(b)(4):**

The Bankruptcy Court argues that the automatic stay does not apply to efforts to solely fix penalties. We cite the following legislative history providing that:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, *environmental protection*, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such law*, the action or proceeding is not stayed under the automatic stay.

S.Rep. No. 95-989 at 52, 1978 U.S.Code Cong. & Ad.News at 5787, 5838; H. Rep. No. 95-595 at 343, 1978 U.S.Code Cong. & Ad.News at 6299 (emphasis added). It is instructive that both the House and Senate Reports used the same language to describe the purpose of § 362(b)(4). My

---

> proceeding by a governmental unit or any organization exercising authority . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. § 362(b)(4).

reading of the above is that the legislative history supports NJDEP's position—that § 362(b)(4) provides an exception to the automatic stay for "attempting to fix damages for violation of such a law."

      B.      ***Penn Terra* and its Progeny Support Granting NJDEP and Exemption to the Automatic Stay:**

This Court's analysis of § 362(b)(4) is instructed by three Third Circuit cases: Penn Terra, Nicolet, and LTV Steel, each of which the Bankruptcy Court cited, in a footnote, as generally inapplicable to the present matter. Our analysis comes to a different conclusion.

The Bankruptcy Court noted that Penn Terra "is inapplicable as it involved . . . a consent order . . . which would require the debtor to expend money. In the matter before us, there is no environmental cleanup or hazard issue." In re. Grace, 384 B.R. at 682 n.4. In Penn Terra Ltd. v. The Dep't. of Envtl. Res., Commw. of Pa., 733 F.2d 267, 278 (3d Cir. 1984), the Third Circuit held that enforcement of a consent order was a valid use of the Pennsylvania Department of Environmental Resource's police and regulatory power. While *dicta*, the court affirmed that imposition of civil penalties constituted a legitimate exercise of the state power noting that "both the Senate and the House committee reports on the Bankruptcy Reform Act explicitly acknowledge environmental protection as a part of the State's police power" and that § 362(b)(4) "should itself be construed broadly, and no unnatural efforts be made to limit its scope. . . so as to leave to the States as much of their police power as a fair reading of the statute allows." Id. at 273. Such powers include the imposition of civil penalties as:

> exercise of a State's police powers may, depending on the circumstances, take the form of an execution on a money judgment. For example, if a coal mining company conducted operations in violation of applicable surface reclamation laws, then *the*

5

> *assessment and collection of a civil penalty to serve as a punishment and deterrence against future violations would be no less an exercise of the police power than if the State had ordered the company to cease operations entirely.*

Id. at 274 n.7 (emphasis added.)

The bankruptcy court found Nicolet "inapplicable as it also was an action to recover cleanup costs." In re. Grace, 384 B.R. at 682 n.4. While Nicolet involved efforts to recover remediation costs, the Third Circuit noted that the Bankruptcy Code did not precisely define when the government's efforts to obtain a money judgment were improper. U.S. v. Nicolet, Inc., 857 F.2d 202, 209 (3d Cir. 1988). Nicolet argued that exemptions to the stay were "intended to apply only to governmental actions seeking prospective relief and not to suits demanding money damages." Id. at 208. The court rejected this approach noting that the Bankruptcy Code does not provide criteria for determining whether a regulatory agency is pursuing in impermissible money judgment. Instead, the court noted that the "paradigm" for an impermissible proceeding "is whether the plaintiff attempts to seize the debtor's property to satisfy the judgment." Id. (citing Penn Terra 733 F.2d at 275). The court noted that § 362(b)(4) permits the fixing of penalties "up to and including *entry* of a money judgment" while collecting that judgment would be proscribed. Id. (citing NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 942-43 (6th Cir. 1986) (emphasis in original)); see United States v. Mattiace Indus., Inc., 73 B.R. 816 (E.D.N.Y. 1987); United States v. Standard Metals Corp., 49 B.R. 623 (D. Colo. 1985); In re. Burns, Civ. A. No. 07-50140, 2008 WL 3246244 (M.D. Pa. Aug. 7, 2008) (permitting governmental suits for monetary relief up to the point of judgment).

Further, the Nicolet court utilized a "pecuniary interest/public policy" analysis asking "whether the governmental proceeding relates principally to the protection of the government's pecuniary interest in the debtor's property, rather than to its public policy interest in the general safety and welfare." Id. (citing Edward Cooper Painting, 804 F.2d at 942).  The former is impermissible while the latter is permitted.  In Nicolet the Court found that the government was not seeking redress for "private wrongs" or "a private contract breach," but rather, the government's action provided a "deterrence element . . . ensuring that responsible parties will be held accountable for their environmental misdeeds." Id. at 209-10.

Finally, the Bankruptcy Court noted that while NJDEP relied n U.S. v. LTV Steel Co., Inc., 269 B.R. 576 (W.D. Pa. 2001), NJDEP's suit, unlike LTV Steel, lacked "a nexus to protection of public health and safety or welfare." In re Grace, 384 B.R. at 682.  Our analysis of LTV Steel differs.  In LTV Steel, the United States sought "calculation of a penalty" for violations of the Clean Air Act.  Id. at 580.  Like Grace, LTV argued that section 362(b)(4) does not apply to "civil penalties for past violations at a closed facility." Id. at 581.

The LTV Steel court rejected this argument, noting that:

> Congress recognized ... that the stay provision was particularly vulnerable to abuse by debtors improperly seeking refuge under the stay in an effort to frustrate necessary governmental functions. To combat the risk that the bankruptcy court would become a sanctuary for environmental wrongdoers . . . Congress enacted the police and regulatory power exception to the automatic stay [at Section 362(b)(4) ].

Id. at 582 (citing Nicolet, Inc., 857 F. 2d 202, 207 (3d Cir. 1988)).  As a result, civil penalties are "one of the primary regulatory enforcement tools Congress included in the legislation and falls squarely within the ordinary meaning of 'police and regulatory power.'" Id.

Following the lead of Penn Terra, Nicolet, and LTV Steel, courts throughout this Circuit have determined that efforts to fix a penalty constitute a valid exception section 362(b)(4). In U.S. v. Sugarhouse, 162 B.R. 113, 115 (E.D. Pa. 1993), the debtor asserted that the imposition of a civil penalty—after a successful clean up at no cost to the government—does not trigger § 362(b)(4) as fines do "not involve a regulatory function." Id. The court rejected this argument finding that fines constitute a "regulatory action in the purest sense" Id. (citing In re Commerce Oil Co., 847 F.2d 291, 296 (6th Cir.1988)), and that deterrence would be undermined if "one in precarious financial condition knows that any action to assess a fine will be stayed by the filing for bankruptcy." Id. (citing Std. Metals Corp., 49 B.R. at 625.)

In In re Burns, 2008 WL 3246244, *4, the court held that civil penalties are "not for the pecuniary interest of the State, but are . . . part of the State's mission to protect its consumers under the Pennsylvania Unfair Trade Practices and Consumer Protection Law" and as they are part of the state's "broader goal of protecting the public at large from unsavory practices" are excepted from the automatic stay.

Likewise, the court in In re Nanticoke Homes, Inc., Civ. A. No. 02-1670, 2003 WL 22287387, *2 (D. Del. Sept. 30, 2003) (citing Nicolet 857 F.2d at 207), reversed the Bankruptcy Court's holding that an enforcement action, including civil penalties and costs, was barred by the automatic stay. The court held that the government's enforcement action "related to matters of public safety and welfare and was intended to effectuate public policy" and thus was a permissible exception under § 362(b)(4). Id.

These cases build upon a simple premise: at times bankruptcy policy must yield to higher priorities. See Penn Terra, 733 F.2d at 278. If preservation of the estate were paramount,

Congress would not have provided for any of the section 362(b) exceptions. But Congress did provide exemptions, and the Third Circuit has recognized that fixing civil penalties, up to the point of collection, is one such exemption.

Given the case law and the legislative history, we conclude that efforts to fix a penalty constitute a permissible exception to the automatic stay. Statutory penalties provide the "'teeth' to New Jersey's environmental laws." In re Madison Indus., Inc. 161 B.R. 363, 366 (D. N.J. 1993.) While a case can be made for a restrictive reading of section 362(b)(4), such a reading has been rejected by courts in this circuit. See e.g. Nicolet, 857 F.2d at 208 (rejecting the argument that section 362(b)(4) does not apply to suits demanding money damages for past violations but noting that the rejected argument is "rational and not at all inconsistent with the statutory text"); In re Nanticoke, 2003 WL 222873387, at *2 (noting that while the Bankruptcy Court's interpretation of section 362(b)(4) was "a rational one based on generally acceptable legal principles" the "legislative history clearly favors the governments position" that actions under the statute were not "intended to protect the government's interest in property, but related to matters of public safety and welfare . . . intended to effectuate public policy.") Rather, a "liberal" reading of § 362(b)(4)—permitting the fixing but not collection of civil penalties—has been the norm. Nevertheless, the bankruptcy court's ultimate decision in this appeal is correct and will be affirmed.

### C.      An Injunction Under § 105(a) is Warranted

The Bankruptcy Court issued injunctions barring NJDEP's efforts to fix the civil penalty owed by Grace as well as to fix and recover a civil penalty from Grace's former officers. NJDEP

argues that these injunctions were in error while Grace avers that 11 U.S.C. 105(a)[4] permits the issuance of such injunctions as "'the exercise of State power, even for the protection of public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted.'" (Grace's Reply to NJDEP Appeal Mot., 8) (citing Penn Terra, 733 F.2d at 273). Courts may apply § 105(a) on a case-by-case basis even if the "bankruptcy code is not operative." Penn Terra, 733 F.2d at 273.

As noted above, this Court disagrees with part of the bankruptcy court's analysis in granting Grace's Motion for Injunctive Relief based on what we view as a misapplication of § 362(b)(4). Despite this, the Bankruptcy Court did not err in enjoining NJDEP's suit against Grace and its former officers. Given the circumstances, issuance of an injunction was appropriate.

In order to obtain an injunction, Grace was required to show: (1) a likelihood of success on the merits; (2) that Grace would suffer irreparable harm if the injunction is not granted; (3) the extent to which the NJDEP would suffer irreparable harm if the injunction was issued; and (4) whether the public interest will be harmed. See McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 356-67 (3d Cir. 2007).

### 1. Likelihood of Success on the Merits

---

[4] Section 105(a) provides that:
> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The Bankruptcy Court noted that "Debtors will succeed on the merits inasmuch as the New Jersey action violates the stay and because the NJDEP cannot receive a distribution from this estate based upon its failure to timely file a proof of claim." In re Grace, 384 B.R. at 683.  The Bankruptcy Court noted that NJDEP cannot recover from the bankruptcy estate.  Id.  Resultingly, the NJDEP will not be successful in recovering any funds from Grace.  This Court recognizes that fixing of a civil penalty may provide New Jersey with a modicum of success.  Civil penalties do not simply punish wrongdoers; they also remind would-be polluters of the potential costs for violating New Jersey's environmental laws.  It is precisely the threat of civil penalties that gives teeth to public welfare laws.  But any such threat that NJDEP has is diminished by its inability to recover any funds.  Accordingly, this factor favors Grace.

### 2.     **Irreparable Harm Suffered by Grace and the NJDEP:**

The Bankruptcy Court noted that while "there exists a wide discrepancy between the amount of the claim ($31 – 800 million), either amount tipped the balance of scales in Debtors' favor with respect to consideration of the relative harm to the parties." In re Grace, 384 B.R. at 683.  The court found it significant that "NJDEP will have no claim to be paid in this case in any amount . . . [t]hus, the irreparable harm by virtue of the expense to the estate of defending an action to liquidate a potential claim only so that the NJDEP can have some comfort in knowing what it could prove but could not collect is self-evident." Id.

While the balance of scales may indeed tip in Grace's favor, such a calculus is far from certain.  Given this Court's prior decision, NJDEP will recover no money from Grace.  As such, the costs to the estate will be neither $31 nor $800 million.  Rather, the costs borne will solely be

11

for litigation expenses related to fixing the penalty amount. Given the legal fees that this case has generated, these additional funds are not liable to be a significant cost for the bankruptcy estate.

As noted previously, the Bankruptcy Court's interpretation of § 362(b)(4) differs. Public welfare laws are not simply retrospective—addressing past violations—they are also forward looking—seeking to shape future behavior. More than simply providing it with the comfort of knowing how much money the state might have recovered, fixing the penalty may deter future polluters. Given this, it is not clear that the harm suffered by Grace outweighs that suffered by the NJDEP.

### 3. Effect Upon the Public Interest

This Court does not necessarily agree that the "NJDEP has not established that an injunction will have an adverse impact on the public interest." Id. The fixing of civil penalties is an exemption countenanced by Congress in its passage of section 362(b)(4). Following Congress' lead, the Third Circuit has in our opinion determined that fixing civil penalties for environmental violations is a valid exception to the automatic stay. NJDEP's suit squarely falls within this exception. The Bankruptcy Court's analysis tends to limit the scope of section 362(b)(4) providing future polluters with the opportunity to avoid civil penalties by filing for bankruptcy. Such an interpretation does not benefit the public interest.

But it is just as clear that timely resolution of the bankruptcy estate is also in the public interest. Asbestos cases have filled the federal docket for decades, and this particular bankruptcy suit been underway for nearly a decade. Actions that needlessly delay a fair settlement agreement deprive claimants of their proceeds while preventing the debtor from completing its reorganization. Such delay does not benefit the public interest.

Balancing competing claims upon the public interest is a qualitative rather than quantitative process. Numerical specificity is not likely to be found. Valid public policy arguments may can be found on both sides of this argument. Accordingly, it is not clear that public policy favors neither party.

### 4. The Bankruptcy Court's Injunctions Were Appropriate

Analysis of the factors warranting an injunction, reveals that it is close call as to whether or not an injunction is appropriate. It is a close call that leans in Grace's favor, however. The following facts further justify the Bankruptcy Court's injunctions: (1) the underlying bankruptcy litigation was initiated eight years ago; (2) New Jersey, due to its failure to timely file a claim, will recover no funds directly from Grace; and (3) as its suit against the former Grace officers is "related to" the underlying bankruptcy litigation, New Jersey will recover no funds from the former officers, either. Given these factors, this situation is one of those rare instances where the "exercise of State power, even for the protection of public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted." Penn Terra, 733 F.2d at 273. For these reason, the Bankruptcy Court appropriately issued the section 105(a) injunctions.

### D. NJDEP May Not Pursue Civil Penalties Against Mr. Bettacchi and Mr. Burrill

Grace argues that NJDEP's appeal failed to include an appeal of the injunction covering Mr. Bettacchi and Mr. Burrill, and as such the NJDEP waived its right to appeal this injunction. (Appellees' Sur-Reply Br. 3-5, Appellants' Resp. to Appellee Mot. For Leave to File Sur-Reply 4-9.)[5] NJDEP does not address this claim directly, but rather notes that this Court is required to

---

[5] This Court does not address this argument because it finds that the Bankruptcy Court's injunction was appropriate.

examine whether the Bankruptcy Court possessed jurisdiction over the "Penalty Action filed against Messrs. Burrill and Bettachi." (Appellants' Resp. to Appellees' Mot. for Leave to File Sur-Reply 4.) NJDEP further argues that the Bankruptcy Court did not possess jurisdiction over its actions against Messrs. Burrill and Bettacchi.

NJDEP, however, errs in asserting that the bankruptcy court lacked jurisdiction over this matter as the suit against the officers is related to the underlying litigation. In accordance with 11 U.S.C. § 105(a), "a bankruptcy court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a)." Section 105(a), however, "does not provide an independent source of federal subject matter jurisdiction." In re Combustion Engr., Inc., 391 F.3d 190, 225 (3d Cir. 2004). Therefore, a bankruptcy court must establish subject matter jurisdiction before considering the merits of a § 105(a) injunction.

"District courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district court may refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Proceedings "related to" a title 11 case include "suits between third parties that conceivably may have an effect on the bankruptcy estate." Combustion Engr., 391 F.3d at 226 (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995)). A bankruptcy court's "related to" jurisdiction, however, is not without limit. Celotex, 514 U.S. at 308; Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).

In Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), the Third Circuit set forth the test for determining "related to" jurisdiction over third-party claims.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Id. at 994 (emphasis in original and citations omitted). A court does not necessarily have "related to" jurisdiction over an action involving a non-debtor party seeking indemnification from a bankruptcy debtor. Even with an indemnification agreement, a court lacks "related to" jurisdiction if the non-debtor's recovery is predicated upon the results of a subsequent action for indemnification. In determining whether "related to" jurisdiction exists, two questions must be asked: (1) does the action against the party seeking indemnification automatically result in debtor's liability for indemnification; and (2) is a subsequent lawsuit against the debtor required prior to a determination of indemnification? If the answer to the first question is "yes" or to the second "no," then automatic indemnification creates "related to" jurisdiction. See Steel Workers Pension Trust v. Citigroup, Inc. et al., 295 B.R. 747, 753 (E.D. Pa. 2003).

When indemnification arises independent of any additional legal actions, the case is "related to" the bankruptcy proceeding. See Royal Indem. Co. v. Admiral Ins. Co. Inc., Civ. A. No. 07-2048, 2007 WL 4171649, *3 (D.N.J. Nov. 19, 2007); Toth v. Bodyonics, Ltd., Civ. A. No. 06-1617, 2007 WL 792172, *1 (E.D. Pa. Mar. 15, 2007); Abrams v. Gen. Nutrition Co., Inc., Civ. A. No. 06-1820, 2006 WL 2739642, *3 (D.N.J. Sept. 25, 2006) (finding "related to" jurisdiction as the indemnification contract did not require a separate, subsequent indemnification action); see also In re Allegheny Health, 383 F.3d 169, 176 n.7 (finding that "related to" jurisdiction existed as

the indemnification claim had matured). When indemnification is not automatic, "related to" jurisdiction does not exist. See In re Combustion Engr., Inc., 391 F.3d 190, 232 (3d Cir. 2004) (determining that "any indemnification agreement claims against [the debtor] . . . would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for 'related to' jurisdiction"); see also In re Pittsburgh Brewing Co., Inc., Civ. A. No. 06-2077, 2006 WL 1666210, *1 (Bankr. W.D. Pa. June 9, 2006) (holding that "related to" jurisdiction did not exist as the basis for the underlying suit did not trigger the indemnification clause).

In the present case, Grace's bylaws provide that:

> [e]ach person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding. . . by reason of the fact that he or she . . . was (a) director or officer of the Corporation . . . shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the GCL as the same exists or may hereinafter be amended . . .[t]he right of indemnification conferred in this Section 6.7 shall be a contract right and shall include the right... .

(Appellants Resp. to Appellee's Mot. for Leave to File Sur Reply, Ex. A, "Amended and Restated Bylaws of W.R. Grace, Section 6.7 Indemnification and Insurance – Subsection (A).) Grace's by-laws provide that any claimant seeking indemnification must "submit to the Corporation a written request including therein or therewith such documentation and information as is reasonably available to the claimant and is reasonably necessary to determine whether and to what extent the claimant is entitled to indemnification." (Id.) On its own, such a requirement seems *de rigeur*—outlining the process by which indemnification claims are to be redeemed—a necessity for informing the corporation of the claim and not inconsistent with automatic indemnification. But the NJDEP asserts that subsection 6.7(B) undermines any claim that indemnification is

16

automatic as the claimant must request indemnification "to 'determine whether and to what extent the claimant is entitled to indemnification.'" (Appellants Resp. to Appellee's Mot. for Leave to File Sur Reply 6 & Ex. A, Section 6.7, Subsection (B).)  This Court interprets the "whether" in subsection (B) as referring to those individuals listed in subsection (A) who are entitled to indemnification.  Similarly "to what extent" refers to the portion of Subsection (A) discussing the scope of indemnification, i.e., those covered "shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the GCL as the same exists or may hereinafter be amended." (Id. at Section 6.7.)  This language is not inconsistent with automatic indemnification.

      NJDEP argues that, subsection (C), calls into question whether indemnification is automatic providing:

> If a claim under paragraph (A) of this Section 6.7 is not paid in full . . . within 30 days after a written claim pursuant to paragraph (B) of this Section 6.7 has been received by the Corporation, *the claimant may at any time thereafter bring suit against the Corporation to recover the said amount of the claim ... .*

(Id. at Subsection (C)) (emphasis added.)  NJDEP notes that "like the action filed against the non-debtor Pacor, Inc. in Pacor, the Penalty Action at best would be 'a mere precursor to the potential third party claim for indemnification.'" (Appellants Resp. to Appellee's Mot. for Leave to File Sur Reply 7.)  The Court finds this argument unpersuasive.  Subsection (A) provides that Grace "shall" indemnify certain employees, subsection (B) provides the means for claiming indemnification, and subsection (C) provides the means of recourse for officers that were not indemnified in accordance with subsection (A) and (B).  Nothing in the bylaws suggest that

17

indemnification is not automatic.  Rather, the bylaws provide Grace with a defense should it fail to indemnify an automatically covered individual.[6]

Examining the present case, it is clear that Grace's bylaws obligate it to indemnify any action brought against its officers.  The language is clear: Grace "shall indemnify to the fullest extent authorized" by Delaware law.  (Appellants Resp. to Appellee's Mot. for Leave to File Sur Reply 7.)  If Grace decides not to indemnify a covered person, subsection (C) provides a defense, but it does not make indemnification any less automatic.  There should be no need for the officers to file a separate, subsequent action.  Therefore, the outcome of the state court suit against Messrs.

---

[6] Notably, courts, have reached different conclusions when examining whether an officer subject to a "good faith" clause is automatically indemnified such that the indemnification clause triggers "related-to" jurisdiction.  See Unovalores Ltd. v. Bennett, Civ. A. No. 05-5859, 2006 WL 2845817, at *3 (D.N.J. Sept. 29, 2006) (comparing IUE-CWA Pension Fund v. Piccirilli (In re Pitt. Brewing Co.), Civ. A. No. 05-50347, 2006 WL 1666210, *3 (Bankr. W.D. Pa. June 9, 2006) with Hohl v. Bastian, 279 B.R. 165, 175 (W.D. Pa. 2002) as both cases involved indemnification clauses requiring "good faith" actions on part of the individual seeking indemnification, yet they reached differing conclusions.)  These cases are distinguishable.  While In re Pitt Brewing Co. noted the existence of an indemnification clause, the court did not examine the clause as it found that the corporate officer was liable in his personal capacity.  By way of comparison, the court in Hohl found that an indemnification clause, even though it required board approval prior to indemnification, created "related to" jurisdiction.  Id. at 175.  The court found "related to" jurisdiction as bylaws required neither (1) a separate action nor (2) satisfaction of any pre-conditions to obtain indemnification.

After examining Pitt Brewing and Hohl, the Unovalores court found that the indemnification clause, notwithstanding its requirement for good faith action, created "related to" jurisdiction.  Unovalores, 2006 WL 2845817, *4.  The facts in Unovalores are particularly instructive.  The case involved the efforts of a former corporate officer, to obtain indemnification from a now bankrupt corporation.  The indemnification agreement provided that officers would be indemnified "if [they] acted in good faith and in a manner [they] reasonably believed to be in, or not opposed to, the best interests of" the company.  Id. at *1.  The court found "related to" jurisdiction even though it was determined that the company held $430 million in debt that this officer "had been hiding" and which led to the officer's subsequently being charged with criminal fraud.  Id. at *2.

Burrill and Bettacchi will affect Grace's bankruptcy, and is sufficiently "related to" Grace's bankruptcy to create jurisdiction under section 1334.

## V. CONCLUSION

For the reasons stated above, the Court finds that while it differs from the Bankruptcy Court's conclusion that section 362(b)(4) bars the NJDEP's effort to fix its civil penalty against Grace, it, however, determines that the Bankruptcy Court's section 105 injunction was appropriate and that the Bankruptcy Court properly barred NJDEP's suit against Grace and its officers. Accordingly, NJDEP's appeal of the Bankruptcy Court's Memorandum is denied. An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| W.R. GRACE & CO., et al., | : | |
| | : | CIVIL ACTION NO. 08-250 |
| Debtors. | : | |
| _____ | : | |
| | : | |
| STATE OF NEW JERSEY, | : | BANKRUPTCY CASE NO. 01-1139 |
| DEPARTMENT OF ENVIRONMENTAL | : | |
| PROTECTION, | : | |
| | : | |
| Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| W.R. GRACE & CO., et al., | : | |
| | : | |
| Appellees. | : | |
| _____ | : | |

## ORDER

**AND NOW**, this 12th day of March, 2009, upon consideration of Appellants' Brief (Docket No. 7), Appellees' Brief (Docket No. 9), and Appellants' Reply Brief (Docket No. 10), Appellees' Motion to File a Sur-Reply (Docket No. 12), and Appellants' Reply to Appellees' Motion to File a Sur-Reply (Docket No. 13), it is hereby **ORDERED** that:

(1) Appellees' Motion to file a Sur-Reply is **GRANTED**, and

(2) Appellants' Appeal of the Bankruptcy Court's Injunctions is **DENIED**.

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.